STATE OF MINNESOTA

COUNTY OF DAKOTA

**DISTRICT COURT**

**FIRST JUDICIAL DISTRICT**
Case type:  Other Civil

---

Darwarnh Edward Greenson,

       Plaintiff,

vs.

County of Dakota,

       Defendant.

**SUMMONS**

Civil Action No. _____

---

**TO:   DEFENDANT COUNTY OF DAKOTA:**

      You are hereby summoned and required to serve upon Plaintiff's attorney an answer to the Complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

      Rule 114 of the Minnesota General Rules of Practice provides for use of alternative dispute resolution in most cases.  Notice of ADR processes will be provided by the Court Administrator in the future.

MID-MINNESOTA LEGAL AID
MINNESOTA DISABILITY LAW CENTER

Dated: July 12, 2013

By _____
Roderick J. Macpherson III
Attorney ID No. 66163
Attorneys for Plaintiff
430 First Avenue North, Suite 300
Minneapolis, MN  55401
Telephone:  (612) 746-3731
Facsimile:  (612) 746-3731
E-Mail:  rjmacpherson@mylegalaid.org

1102-0309959-1134674 docx

Exhibit # ____A____

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT
Case type:  Other Civil

---

Darwarnh Edward Greenson,

        Plaintiff,

vs.

County of Dakota,

        Defendant.

COMPLAINT

Civil Action No. _____

---

## I. INTRODUCTION

1.    Darwarnh Edward Greenson (hereafter "Plaintiff") is a deaf man who was incarcerated in the Dakota County Jail (hereafter referred to as "the Jail") on two occasions in 2009:  The first incarceration was from September 5-6, 2009.  The second was from October 23-25, 2009.  Defendant County of Dakota (hereafter "Defendant"), which is responsible for the operation of the Jail, did not provide an American Sign Language (ASL) interpreter at any time during either of the occasions when Plaintiff was incarcerated.  In addition, Defendant provides various services and programs for inmates of the Jail, including providing telephones to allow inmates to communicate with friends, family, and other people while they are incarcerated.  The Defendant did not provide appropriate auxiliary aids and services, including TTY devices, to allow Plaintiff to fully and equally use and benefit from the telephone services Defendant provides to other inmates of the Jail.

2.      Plaintiff's lawsuit is not the first complaint Defendant has received that it did not provide appropriate auxiliary aids and services, including ASL interpreters and/or TTY devices, to deaf people incarcerated at the Jail.  On at least one other occasion prior to 2009 discrimination charges were filed with the Minnesota Department of Human Rights and the U.S. Department of Justice complaining Defendant did not provide interpreters and TTY devices. The Defendant signed a settlement agreement with the U.S. Department of Justice in 2008, agreeing to provide interpreters and TTY devices to deaf people incarcerated in the Jail.  (*United States of America v. Dakota County, Minnesota (Matejka)* DOJ # 204-39-139).  It also signed a settlement agreement with the Minnesota Department of Human Rights in 2007, agreeing to provide interpreters and TTY devices, (*Matejka v. County of Dakota Sheriff*, MDHR REF. # 44678).

3.      Plaintiff brings this legal action pursuant to the Minnesota Human Rights Act (MHRA) (Minn. Stat. § 363A.12), the Americans with Disabilities Act (ADA) (42 U.S.C. § 12132), the Federal Rehabilitation Act (29 U.S.C. § 794) and Minnesota common law, to obtain declaratory relief and injunctive relief required by the law.  Plaintiff also seeks to recover statutory attorney's fees incurred in bringing this action for declaratory and injunctive relief.

## II. PROCEDURAL HISTORY

4.      There is a case now pending in Federal Court involving the same parties and the same factual incidents that seeks only recovery of damages as a remedy.  *Greenson v. County of Dakota*, United States District Court File No. 12-CV-03128 (MJD/JJK).

5.      Plaintiff's lawsuit was initially commenced as a state court lawsuit when Plaintiff served a state court Summons and Complaint upon Defendant on December 4, 2012.  Plaintiff's

lawsuit requested compensatory and punitive damages, as well as declaratory and injunctive relief.

6.    Defendant removed Plaintiff's state court lawsuit to the United States District Court for the District of Minnesota on December 18, 2012. The case has been designated as United States District Court File No. 12-CV-03128 (MJD/JJK). However, the Federal Court lacks jurisdiction to hear and resolve Plaintiff's requests for declaratory and injunctive relief. Plaintiff, therefore, filed a motion asking the Federal Court to dismiss without prejudice his requests for declaratory and injunctive relief.

7.    On June 18, 2013, the Federal Court (Judge Michael J. Davis) issued an order adopting the recommendation of Magistrate Judge Keyes and dismissing without prejudice Plaintiff's requests for declaratory and injunctive relief for lack of federal jurisdiction. The Court ruled Plaintiff lacked standing to have his claims for declaratory and injunctive relief heard by the Federal Court. True and accurate copies of the Recommendation of the Magistrate Judge (ECF # 21) and the Order for Dismissal Without Prejudice (ECF # 23) are attached to this Complaint as Exhibits A and B.

8.    Plaintiff's state court lawsuit requests only the remedies of declaratory and injunctive relief. It does not request compensatory or punitive damages.

### III. REQUEST FOR DESIGNATION AS A COMPLEX CASE

9.    Plaintiff requests that this case be designated as a complex case and assigned to a single judge, pursuant to Rule 146 of the General Rules of Practice for the District Courts in Minnesota, because it requires coordination with a related action pending in the United States District Court for the District of Minnesota (*Greenson v. County of Dakota*, U.S. D.C. File No. 12-CV-03128).

3

## IV. JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiff's case pursuant to Minn. Stat. §§ 363A.12 and 363A.33.

11.     Venue is proper within this District pursuant to Minn. Stat. § 542.01.

12.     Plaintiff filed a timely charge of disability discrimination against the Defendant with the Minnesota Department of Human Rights.  The Minnesota Department of Human Rights found probable cause existed to support Plaintiff's discrimination charge.  Plaintiff withdrew his discrimination charge from the Minnesota Department of Human Rights on October 17, 2012.

13.     The statute of limitations covering Plaintiff's claims has been tolled for thirty days following the entry of the Order of the Federal Court dismissing without prejudice Plaintiff's claims for declaratory and injunctive relief pursuant to 28 U.S.C. § 1367(D).

## V. PARTIES

14.     Plaintiff, Darwarnh Edward Greenson, resides in Dakota County, Minnesota.

15.     Plaintiff is a deaf individual, whose hearing is severely limited.

16.     Plaintiff's primary language is American Sign Language (ASL), which he uses to communicate with hearing people and with deaf people.  When he communicates with hearing people concerning significant and complex matters, such as medical and legal matters, he uses an ASL interpreter to assure effective communication with people who are hearing and who do not use ASL.

17.     Defendant County of Dakota is a political subdivision in the State of Minnesota, specifically it is a county.

18.     Defendant is a public service, as defined by the Minnesota Human Rights Act, Minn. Stat. § 363A.03, subdiv. 34.

4

19.     Defendant operates the Jail, located in Hastings, Minnesota, which is one of its programs and services, as that term is used by Minn. Stat. § 363A.12.

## VI.  FACTS

### September 2009 Incarceration

20.     On September 5, 2009, Plaintiff was arrested and incarcerated by Defendant in the Jail, where he was held from September 5-6, 2009.

21.     Defendant knew Plaintiff was deaf and that he needed ASL interpreters and other auxiliary aids and services.

22.     Plaintiff, and others acting on his behalf, made several requests for an ASL interpreter on September 5, 2009, when Plaintiff arrived at the Jail.  Defendant failed to provide an ASL interpreter for communications between its staff and Plaintiff on September 5, 2009.

23.     Defendant did not provide an ASL interpreter for communications with Plaintiff until September 6, 2009, shortly before Plaintiff was released from the Jail.  Defendant only allowed Plaintiff to use the interpreter for a few minutes that day.

24.     Defendant provides telephones which inmates in the Jail can use to make telephone calls to friends, family, loved ones and other people while they are incarcerated.

25.     Plaintiff could not use the telephones at the Jail, because he is deaf.

26.     Defendant failed to provide a TTY device Plaintiff could use to make calls to people outside the Jail during Plaintiff's incarceration in September 2009.

27.     Defendant's actions subjected Plaintiff to illegal discrimination based on disability.

**October 2009 Incarceration**

28.     Plaintiff was incarcerated a second time in the Jail between October 23-25, 2009.

29.     Before Plaintiff arrived at the Jail for his October 2009 incarceration, Defendant knew Plaintiff would present himself for incarceration on October 23, 2009, and also knew Plaintiff was deaf and that he would need auxiliary aids and services while he was incarcerated.

30.     When Plaintiff arrived at the Jail on October 23, 2009, Defendant had not made arrangements for appropriate auxiliary aids and services (including an ASL interpreter) that were necessary for Plaintiff to fully and equally use and benefit from the programs, services and activities Defendant provides to other inmates of the Jail.

31.     Defendant did not provide an ASL interpreter to interpret any communication between its Jail staff and Plaintiff during his booking and admission into the Jail on October 23, 2009.

32.     Defendant did not provide a TTY Plaintiff could use to communicate with his family, friends and other people who were outside the Jail when Plaintiff was incarcerated in the Jail in October 2009.  As a result of Defendant's failure to provide a TTY for Plaintiff, Plaintiff was not able to make phone calls and communicate with people outside the Jail, like other inmates could do.

33.     Defendant's actions subjected Plaintiff to illegal discrimination based on disability.

6

## VII.  FIRST CAUSE OF ACTION
### VIOLATION OF MINNESOTA HUMAN RIGHTS ACT

34.     Plaintiff re-alleges the contents in Paragraphs 1-33 of this Complaint and

incorporates their contents into this Cause of Action by reference.

35.     Plaintiff is a person with a disability as that term is used in Minn. Stat. § 363A.12.

36.     Defendant is an entity covered by the Public Services section of the Minnesota

Human Rights Act (Minn. Stat. § 363A.12).

37.     Defendant's failure to provide Plaintiff with appropriate auxiliary aids and

services when he was incarcerated denied Plaintiff full and equal use of and benefit from the

Defendant's services, facilities, privileges, advantages, and accommodations at the Jail based on

his disability, in violation of Minn. Stat. § 363A.12.  This includes specifically, but is not limited

to, the following actions:

        a.     Defendant's failure to provide an ASL interpreter for communications
during the booking and intake procedure for Plaintiff on each of the two
occasions when Plaintiff was incarcerated in the Jail in 2009; and

        b.     Defendant's failure to provide a TTY or other effective auxiliary aid or
service to allow him to communicate equally and effectively with people
outside the Jail on each of the two occasions when Plaintiff was
incarcerated in the Jail in 2009.

38.     Defendant's actions, failures, policies and practices also failed to ensure Plaintiff

program access to its programs, services and facilities, in violation of Minn. Stat. §§ 363A.12

and 363A.03, subdiv. 33.

39.     Defendant's actions, omissions, policies and practices have subjected Plaintiff to

illegal discrimination in violation of Minn. Stat. § 363A.12 by reason of his disability.

7

## VIII.  SECOND CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

40.     Plaintiff re-alleges the contents of Paragraphs 1 through 39 of this Complaint and incorporates their contents into this Cause of Action by reference.

41.     Plaintiff is a person with a disability as that term is used by 42 U.S.C. § 12132.

42.     Defendant is a public entity covered by Title II of the Americans with Disabilities Act (42 U.S.C. § 12132).

43.     Defendant is responsible for operating, managing and supervising the Jail.

44.     Defendant's failure to provide an ASL interpreter to ensure adequate and effective communication with Plaintiff during his two periods of incarceration in the Jail violated the prohibition against discrimination contained in Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

45.     Defendant's failure to provide a TTY or other effective auxiliary aid Plaintiff could use to communicate with people outside the Jail during the times he was incarcerated violated the prohibition against discrimination contained in Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

46.     Defendant's actions, omissions, policies and practices discriminated against Plaintiff on the basis of disability and denied him the equal benefit of its services, programs and activities in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

## IX.  THIRD CAUSE OF ACTION
### VIOLATION OF THE FEDERAL REHABILITATION ACT

47.    Plaintiff re-alleges the contents of Paragraphs 1 through 46 of this Complaint and incorporates them into this Cause of Action by reference.

48.    To the best of Plaintiff's information and belief, Defendant is an entity which receives funding from the United States Government for the operation of the Jail and is, therefore, covered by the Federal Rehabilitation Act (29 U.S.C. 794).

49.    Plaintiff is a person with a disability as that term is used by 29 U.S.C. § 794.

50.    Defendant's failure to provide an ASL interpreter to ensure adequate and effective communication with Plaintiff during the times he was incarcerated in the Jail violated the prohibition against discrimination based on disability contained in the Federal Rehabilitation Act (29 U.S.C. § 794) and its implementing regulations.

51.    Defendant's failure to provide a TTY or other effective auxiliary aid which Plaintiff could use to communicate with people outside the Jail during the periods of time when he was incarcerated violated the prohibition against discrimination contained in the Federal Rehabilitation Act (29 U.S.C. § 794) and its implementing regulations.

## X.  FOURTH CAUSE OF ACTION
### NEGLIGENCE

52.    Plaintiff re-alleges the contents of Paragraphs 1 through 51 of this Complaint and incorporates their contents into this Cause of Action by reference.

53.    Plaintiff is a person disabled in communication as that term is defined by Minn. Stat. § 611.30.

54.    Defendant has a statutory duty to provide ASL interpreters to communicate with Plaintiff during his incarceration concerning certain information required by Minn. Stat. §

9

611.32, including, but not limited to, information concerning procedures relating to their detainment and release.

55.    Defendant failed to provide ASL interpreters to communicate to Plaintiff the information requested by Minn. Stat. § 611.32.

## XI.  FIFTH CAUSE OF ACTION
### BREACH OF CONTRACT
### US DEPARTMENT OF JUSTICE SETTLEMENT AGREEMENT

56.    Plaintiff re-alleges the contents of Paragraphs 1-55 of this Complaint and incorporates their contents into this Cause of Action by reference.

57.    On or about September 26, 2008, Defendant entered into an agreement with the United States Department of Justice to settle a disability discrimination complaint brought by a person who is deaf which alleged Defendant had failed to provide ASL interpreters and access to TDD/TTY services while he was incarcerated in the Dakota County Jail. (*Settlement Agreement in U.S Department of Justice ADA Complaint No. 204-39-139*).

58.    In the Settlement Agreement, Defendant agreed to take various actions to ensure it provided deaf and hard-of-hearing detainees with access to ASL interpreters and TDD/TTY devices, including but not limited to the following actions.

- Ensuring that appropriate auxiliary aids are provided to detainees at the Dakota County Jail who are deaf or hard of hearing.  (Paragraph 7.2);

- Ensuring that appropriate auxiliary aids are made available to detainees who are deaf or hard of hearing for the booking process, orientation, and other services, programs, and activities provided by Defendant at the Dakota County Jail (Paragraph 7.3);

10

- Giving primary consideration to requests for particular types of auxiliary aids made by detainees who are deaf or hard of hearing and honoring those requests, subject to certain exceptions (Paragraph 7.4);

- Offering qualified sign language interpreters to detainees who are deaf or hard of hearing and who request interpreters (Paragraph 7.5); and

- Providing TDD devices to detainees who are deaf or hard of hearing (Paragraph 7.8).

59.     A true and accurate copy of the Settlement Agreement between Defendant and the U.S. Department of Justice (*Settlement Agreement in U.S Department of Justice ADA Complaint No. 204-39-139*) is attached to this Complaint as Exhibit C.

60.     Defendant's actions on the two occasions when Plaintiff was incarcerated in the Jail in September and October, 2009, which are described in Paragraphs 20 - 33 breached Defendant's obligations under the Settlement Agreement with the U.S. Department of Justice.

61.     Plaintiff is an intended beneficiary of the requirements of the Settlement Agreement between the Defendant and the U.S. Department of Justice.

## XII.  SIXTH CAUSE OF ACTION
### BREACH OF CONTRACT
### MINNESOTA DEPARTMENT OF HUMAN RIGHTS
### SETTLEMENT AGREEMENT

62.     Plaintiff re-alleges the contents of Paragraphs 1-61 of this Complaint and incorporates their contents into this Cause of Action by reference.

63.     On or about January 8, 2007, Defendant entered into an agreement with the Minnesota Department of Human Rights to settle a disability discrimination complaint

brought by a person who is deaf which alleged Defendant had failed to provide ASL interpreters and access to TTY services while he was incarcerated in the Dakota County Jail (*In the Matter of Allen Matejka v. Dakota County, Minnesota*, DHR File No. 44768).

64.   In the Settlement Agreement, Defendant agreed to take various actions to ensure it provided deaf and hard-of-hearing detainees with access to ASL interpreters and TDD/TTY devices , including but not limited to the following actions:

- Ensuring that appropriate auxiliary aids are provided to detainees at the Dakota County Jail who are deaf or hard of hearing.  (Paragraph 2.2);

- Ensuring that appropriate auxiliary aids are made available to detainees who are deaf or hard of hearing for the booking process, orientation, and other services, programs, and activities provided by Defendant at the Dakota County Jail (Paragraph 2.3);

- Giving primary consideration to requests for particular types of auxiliary aids made by detainees who are deaf or hard of hearing and honoring those requests, subject to certain exceptions (Paragraph 2.4);

- Offering qualified sign language interpreters to detainees who are deaf or hard of hearing and who request interpreters (Paragraph 2.5); and

- Providing TDD devices to detainees who are deaf or hard of hearing (Paragraph 2.8).

65.   A true and accurate copy of the Settlement Agreement between Defendant and the Minnesota Department of Human Rights (*In the Matter of Allen Matejka v Dakota County, Minnesota*, DHR File No. 44768) is attached to this Complaint as Exhibit D.

66.    Defendant's actions on the two occasions when Plaintiff was incarcerated in the Jail September and October, 2009, which are described in Paragraphs 20 - 33 breached Defendant's obligations under the Settlement Agreement with the Minnesota Department of Human Rights.

67.    Plaintiff is an intended beneficiary of the requirements of the Settlement Agreement between the Defendant and the Minnesota Department of Human Rights.

## XIII.  RELIEF REQUESTED

Plaintiff, therefore, respectfully requests that this Court issue the following relief:

1.    Issue a declaratory judgment that Defendant's actions, omissions, policies and practices described in this Complaint violated the rights of Plaintiff and other deaf people under the Minnesota Human Rights Act, the Americans with Disabilities Act (ADA), the Federal Rehabilitation Act, and Minn. Stat. § 611.30 et seq.

2.    Issue an order for injunctive relief directing Defendant to cease and desist from violating the Minnesota Human Rights Act, the Americans with Disabilities Act (ADA), the Federal Rehabilitation Act, and Minn. Stat. § 611.30 et seq., and directing Defendant to take affirmative action to effectuate the purposes of the federal and state laws, including but not limited to:

   a.    Adopting and implementing effective policies, practices and procedures to ensure Defendant timely provides qualified interpreters, and other effective auxiliary aids for deaf and hard-of-hearing people at the Jail;

   b.    Providing qualified ASL interpreters for communications between deaf and hard-of-hearing detainees and Defendant's staff at the Jail during the booking and admission procedures at the Jail and during other significant communications;

   c.    Providing deaf and hard-of-hearing detainees access to videophones, and other appropriate and effective auxiliary aids that will allow them to

13

communicate with people outside the Jail on the same basis that other inmates use the telephone; and

d.   Training its staff concerning the Defendant's obligations under the Minnesota Human Rights Act, the Americans with Disabilities Act (ADA), the Federal Rehabilitation Act, and Minn. Stat. § 611.30 et seq. and concerning practices and procedures that will ensure Defendant complies with its obligations under those laws; and

e.   Reporting to the Court and to Plaintiff concerning its compliance with the Court's Order.

3.   Appoint an independent monitor responsible for overseeing Defendant's compliance with its orders.

4.   Award Plaintiff statutory attorneys' fees and expenses pursuant to Minn Stat § 363A.33, subdiv. 7, the ADA, and the Federal Rehabilitation Act.

MID-MINNESOTA LEGAL AID
MINNESOTA DISABILITY LAW CENTER

Dated: July 12, 2013

Roderick J. Macpherson III (#66163)
Attorneys for Plaintiff
430 First Avenue North, Suite 300
Minneapolis, MN 55401
Telephone: (612) 746-3731
Facsimile: (612) 334-5755
E-Mail: rjmacpherson@mylegalaid.org

## ACKNOWLEDGMENT REQUIRED BY
## MINN. STAT. § 549.21, SUBDIV. 1

The undersigned hereby acknowledges that pursuant to Minn. Stat. § 549.21, subdiv. 2, costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Respectfully submitted,

**MID-MINNESOTA LEGAL AID**
**MINNESOTA DISABILITY LAW CENTER**

Date July 12, 2013

By: _____
Roderick J. Macpherson III
Attorney ID No. 66163

1102-0309959-1124376 docx

15

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Darwarnh Edward Greenson, | Civ. No. 12-3128 (MJD/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| County of Dakota, | |
| Defendant. | |

Roderick J. Macpherson, III, Esq., MN Disability Law Center, counsel for Plaintiff.

Kathryn M. Keena, Esq., and Andrea G. White, Esq., Dakota County Attorney's Office, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Plaintiff Darwarnh Edward Greenson's Motion for Voluntary Dismissal of Certain Requests for Relief or Certain Claims (Doc. No. 8). The District Court has referred the motion to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1. Plaintiff originally filed this case in the Dakota County District Court for the State of Minnesota asserting claims under the Minnesota Human Rights Act, the Americans with Disabilities Act, the Federal Rehabilitation Act, and a common-law negligence claim, and seeking damages as well as declaratory and injunctive relief. Defendant removed the case to federal court under 28 U.S.C. § 1446(a), on the grounds that the Complaint raised federal statutory claims over which the



Court would have original jurisdiction under 28 U.S.C. § 1331.  Now, Plaintiff asks this Court to allow him to voluntarily dismiss either his requests for declaratory and injunctive relief or his state law claims and the corresponding requests for prospective relief on grounds that this Court lacks jurisdiction to provide such a remedy under the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  For the reasons that follow, this Court recommends that Plaintiff's motion be denied as moot and that his requests for declaratory and injunctive relief be dismissed without prejudice.

## FACTS

Plaintiff is a deaf man who was incarcerated on two separate occasions during 2009 in the Dakota County Jail.  (Doc. No. 1, Att. 1, Compl. ¶ 1.)  On both occasions he was detained in the Dakota County Jail, he alleges that Defendant failed to provide him with auxiliary aids and services that would allow him to benefit from the use of the telephone in the same way as the inmates of the jail that were not hearing impaired.  (Compl. ¶¶ 1, 14–27.)  Plaintiff alleges that before he was incarcerated and before he filed suit, Defendant had reached a settlement with the United States Department of Justice and the Minnesota Department of Human Rights in similar cases, and Defendant allegedly agreed to provide interpreters and TTY devices to its deaf inmates.  (Compl. ¶ 2.)

On December 3, 2012, Plaintiff commenced this action in the Dakota County District Court for the State of Minnesota.  (Doc. No. 1, Att. 1 at 1, Summons.)  Plaintiff asserted claims under two federal statutes: the Americans

2

with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and the Federal Rehabilitation

Act ("FRA"), 29 U.S.C. § 794. (Compl. ¶¶ 35–48.) Plaintiff also asserted a

common law claim for negligence under Minnesota law, and a claim under the

Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.12, and 363A.03,

subd. 33. (Id. ¶¶ 49–53 (negligence claim); id. ¶¶ 28–34 (MHRA claim).) In his

prayer for relief, Plaintiff sought damages, but he also asked the Court to grant

prospective declaratory and injunctive relief. Specifically, he requested that the

Court:

> 1.    Issue a declaratory injunction that Defendant's actions, omissions, policies and practices described in this Complaint [i.e., failing to provide suitable devices to accommodate deaf inmates] violated the rights of Plaintiff and other deaf people under the [MHRA, the ADA, the FRA], and Minnesota common law
>
> 2.    Issue its order for injunctive relief directing Defendant to:
>
> a.    Provide qualified ASL interpreters for communications with their staff during the booking and admission procedures at the Jail;
>
> b.    Provide deaf inmates access to appropriate and effective auxiliary aids that will allow them to communicate with people outside the Jail; and
>
> c.    Take other appropriate corrective actions, including, but not limited to, training its staff, which will ensure Defendant fully complies with its obligations under the [MHRA, the ADA, the FRA] and Minnesota common law.

(Id., Relief Requested ¶¶ 1, 2.a.–2.c.)

Because Plaintiff's Complaint included two federal statutory claims within the Court's original jurisdiction, Defendant was entitled to remove this action to federal court, which it did on December 18, 2012.  28 U.S.C §§ 1331, 1446(a); (Doc. No. 1, Notice of Removal).  Then, on March 1, 2013, Plaintiff filed his now pending Motion for Voluntary Dismissal of Certain Requests for Relief and/or Certain Claims.  (Doc. No. 8.)  In the motion Plaintiff asks the Court to issue an order under Federal Rule of Civil Procedure 41(a)(2), allowing him to either: (1) voluntarily dismiss, without prejudice, his requests for prospective injunctive and declaratory relief; or (2) voluntarily dismiss, without prejudice, both of his state law claims in their entirety, including the corresponding requests for prospective injunctive and declaratory relief.  (Id. at 1–2.)  As grounds for his motion, Plaintiff asserts that the Court lacks jurisdiction over his claims for prospective declaratory and injunctive relief under the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  (Id. at 2; Doc. No. 9, Pl.'s Mem. in Supp. of Mot. for Voluntary Dismissal ("Pl 's Mem."), *passim*.)

## DISCUSSION

I.   **Voluntary Dismissal Under Rule 41(a)(2) is Not Appropriate**

   A.   **Rule 41(a)(2)**

   Decisions on motions filed under Rule 41(a)(2) are committed to the district court's discretion.  *Johnson v. Cartwright*, 355 F.2d 32, 39 (8th Cir. 1966).  Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . .  Unless the order

4

states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed.

R. Civ. P. 41(a)(2).  District courts decide whether to allow voluntary dismissal

under the Rule according to the following considerations:

> A decision whether to allow a party to voluntarily dismiss a
> case rests upon the sound discretion of the court.  In exercising that
> discretion a court should consider factors such as whether the party
> has presented a proper explanation for its desire to dismiss, whether
> a dismissal would result in a waste of judicial time and effort, and
> whether a dismissal will prejudice defendants.  Likewise, a party is
> not permitted to dismiss merely to escape an adverse decision nor to
> seek a more favorable forum.

*Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)

(citations omitted).

**B.     Analysis**

Plaintiff's motion raises an unsettled question about the propriety of using

Rule 41(a) to voluntarily dismiss something other than an entire action.  Rule

41(a)(2) refers specifically to a plaintiff's ability to voluntarily dismiss "an action."

Fed. R. Civ. P. 41(a)(2).   This reference to dismissing an "'action[]' contrasts with

Rule 41(b), which provides that 'a defendant may move for dismissal of an action

*or of any claim* against him.'"  *Gronholz v. Sears, Roebuck and Co.*, 836 F.2d

515, 518 (Fed. Cir. 1987) (quoting *Smith, Kline & French Labs v. A.H. Robins*

*Co.*, 61 F.R.D. 24, 28–29 (E.D.Pa. 1973), and Fed. R. Civ. P. 41(b)) (emphasis

added).  Because Rule 41(a) refers to dismissal of "actions" rather than individual

"claims," some courts have concluded that "Rule 41(a) does not provide for the

voluntary dismissal of less than all claims against any defendant."  *Graco, Inc. v.*

*Techtronic Indus. N. Am., Inc.*, Civ. No. 09-1757 (JRT/RLE), 2010 WL 915213, at *2 (D. Minn. Mar. 9, 2010) (citing cases).

Some courts treat motions seeking to voluntarily dismiss only a portion of a complaint as motions to amend the complaint under Rule 15(a). *See Smith v. Lurie*, Civ. No. 09-3513 (DWF/SER), 2011 WL 5025267, at *1 (D. Minn. Oct. 21, 2011). But, the Eighth Circuit Court of Appeals has described the difference between a motion for partial voluntary dismissal and a motion to amend as "'more technical than substantial.'" *Id.* (quoting *Wilson v. Crouse-Hinds Co.*, 556 F.2d 870, 873 (8th Cir. 1977)). As noted in former United States Magistrate Judge Raymond L. Erickson's Report and Recommendation in *Graco*, the Eighth Circuit's characterization of the difference between Rule 15(a) and Rule 41(a) motions to dismiss only a portion of a case "follows from a realization that the Court must dismiss those voluntarily dismissed 'claims'—even if they constitute less than the plaintiff's entire cause of action—when they no longer present an actual 'case or controversy' over which the Court can have subject matter jurisdiction." *Graco*, 2010 WL 915213, at *3 (citing *Defenders of Wildlife, Friends of Animals and Their Environment v. Hodel*, 851 F.2d 1035, 1038 (8th Cir. 1988)).

This Court need not resolve this uncertainty in the law to address the issues before it.[1] The parties agree that the Court lacks jurisdiction over Plaintiff's requests for prospective declaratory and injunctive relief  And this Court concludes, as explained in Part II of this Report and Recommendation, that jurisdiction is indeed lacking.  Thus, there is no reason for this Court to determine the proper procedural mechanism for a party to request the type of relief Plaintiff asks for in his motion for voluntary dismissal.

## II.   Article III Case or Controversy

The parties acknowledge that the Court has no jurisdiction to entertain Plaintiff's claim for prospective declaratory and injunctive relief.  This Court agrees.  In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court held that the federal courts have no jurisdiction to hear a plaintiff's request for prospective injunctive relief when the requested injunction relates to a threat of future injury that is neither "real" nor "immediate," but is instead only "conjectural"

---

[1]     Plaintiff's motion is motivated by his desire to have his requests for prospective declaratory and injunctive relief heard in a separate action in state court. (Pl.'s Mem. 10–12 (arguing that Plaintiff could bring his claims against Defendant in state court following dismissal under the rules of "standing" established by the Minnesota state courts).)  Plaintiff's counsel confirmed Plaintiff's intent to start a separate state court case if he obtains the relief he requested at the May 28, 2013 hearing on the motion.  If this court was exercising its discretion to dismiss this claim under Rule 41(a), it would have to take heed of the Eighth Circuit's instruction that "a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum."  *Hamm*, 187 F.3d at 950.  But this Court need not confront this issue because, as explained in more detail below, the Court has no jurisdiction in the first instance over Plaintiff's claims for prospective declaratory and injunctive relief.

or "hypothetical." *Id.* at 101–06. In *Lyons*, the plaintiff had been arrested by members of the Los Angeles Police Department and subjected to a chokehold or control hold that allegedly rendered him unconscious and damaged his larynx. *Id.* at 97–98. As Plaintiff does in this case, the plaintiff in *Lyons* sought both damages and prospective injunctive relief. *Id.* at 98. The *Lyons* plaintiff sought an injunction that would prohibit the Los Angeles police from using the chokehold or control holds in the future on grounds that the holds were a matter of routine police practice as authorized by the City of Los Angeles. *Id.* On that basis, the plaintiff asserted that he and others similarly situated to him were threatened with irreparable injury. *Id.*

The Supreme Court explained that to invoke the jurisdiction of the federal courts a plaintiff must demonstrate that "he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101–02. This requirement flows from the "threshold requirement imposed by Art. III of the Constitution [which requires] alleging an actual case or controversy." *Id.* at 101. And the Supreme Court concluded that the fact the plaintiff

> may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

8

*Id.* at 105. In other words, because the plaintiff in *Lyons* could do no more than

allege that it was hypothetically possible that he could be stopped by police again

and subjected to the control holds at issue without provoking the police, he failed

to establish that there was an Article III case or controversy for the federal courts

to hear his claim for prospective equitable relief.

 The same is true of Plaintiff's request for prospective declaratory and

injunctive relief in this case. Although Plaintiff alleges that the Dakota County

Jail's practices are to routinely deny deaf inmates access to auxiliary aids that

would put them on equal footing with inmates who are not deaf, he does not

plead any facts that would suggest he is in immediate threat of again being

arrested in Dakota County, confined in the Dakota County Jail, and denied

access to the TTY devices or interpreter services he asserts he is entitled to

receive under both state and federal anti-discrimination law. *See Lyons*, 461

U.S. at 108 ("[I]t is surely no more than speculation to assert either that Lyons

himself will again be involved in one of those unfortunate instances [when a

control hold is illegally applied to a person stopped by the Los Angeles police], or

that he will be arrested in the future and provoke the use of a chokehold by

resisting arrest, attempting to escape, or threatening deadly force or serious

bodily injury."); *Bahl v. County of Ramsey*, 597 F. Supp. 2d 981, 983–84 (D.

Minn. 2009) (dismissing deaf inmates' requests for declaratory and injunctive

relief against Ramsey County where the plaintiffs could not show a likelihood of

future injury sufficient to create an Article III case or controversy). Because Plaintiff cannot show that a likelihood of future injury is real and immediate, his requests for prospective declaratory and injunctive relief fail to present a case or controversy within the Court's jurisdiction.

Accordingly, dismissal without prejudice of Plaintiff's requests for declaratory and injunctive relief is appropriate. The effect of dismissing these forward looking equitable requests for relief without prejudice is where the parties appear to be most at odds. Plaintiff, as noted above in note 1, intends to file a separate case in Dakota County District Court, and Defendant wants to avoid having a dual track for this litigation in two forums where Plaintiff pursues different remedies for the same set of facts and circumstances. The parties appear to want this Court to give them an advisory opinion about whether Plaintiff would be allowed, post-dismissal, to pursue these requests for prospective injunctive and declaratory relief in state court. But this Court does not give advisory opinions and will not presume to tell a Minnesota court what to do with any lawsuit that Plaintiff chooses to file.

### RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Plaintiff's Motion for Voluntary Dismissal of Certain Requests for Relief or Certain Claims (Doc. No. 8), be **DENIED AS MOOT**; and

    2.      Plaintiff's requests for prospective declaratory and injunctive relief be

**DISMISSED WITHOUT PREJUDICE.**

Date: May 29, 2013

                                                    *s/ Jeffrey J. Keyes*
                                                    JEFFREY J KEYES
                                                  United States Magistrate Judge

       Under Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 12, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the bases of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

       Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Darwarnh Edward Greenson, | Civ. No. 12-3128 (MJD/JJK) |
| Plaintiff, | |
| v. | ORDER |
| County of Dakota, | |
| Defendant. | |

---

Roderick J. Macpherson, III, Esq., MN Disability Law Center, counsel for Plaintiff.

Kathryn M. Keena, Esq., and Andrea G White, Esq., Dakota County Attorney's Office, counsel for Defendant.

---

The above matter comes before the Court upon the Report and Recommendation of United States Magistrate Judge Jeffrey J. Keyes dated May 29, 2013 [Doc. #21)].  No objections have been filed to that Report and Recommendation in the time period permitted.  Based upon the Report and Recommendation of the Magistrate Judge, upon all of the files, records, and proceedings herein, the Court now makes and enters the following Order.

**IT IS HEREBY ORDERED** that:

1.   Plaintiff's Motion for Voluntary Dismissal of Certain Requests for Relief or Certain Claims (Doc. No. 8), is **DENIED AS MOOT**; and

2.   Plaintiff's requests for prospective declaratory and injunctive relief is **DISMISSED WITHOUT PREJUDICE.**

Date: June 18, 2013

s/Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court


PLAINTIFF'S EXHIBIT B

# SETTLEMENT AGREEMENT

## IN

## U.S. DEPARTMENT OF JUSTICE ADA COMPLAINT NO. 204-39-139

### UNITED STATES OF   AMERICA
### v.
### DAKOTA COUNTY, MINNESOTA

## RECITALS

1.      This matter was initiated by a complaint against Dakota County filed by Allen Matejka on June 29, 2004, with the United States Attorney's Office for the District of Minnesota (the United States) under Title II of the Americans with Disabilities (ADA), 42 U.S.C. 12131-12134 . In his complaint, Matejka, who is deaf, alleged that Dakota County violated the ADA by not providing a qualified sign language interpreter when necessary to ensure effective communication with him while he was being booked at the Dakota County Jail. Matejka further alleged that Dakota County failed to provide a Telecommunications Device for the Deaf ( TDD) or make other accommodations to enable him to make outgoing calls in the same manner as other arrestees at the Dakota County Jail.

2.      The ADA applies to Dakota County because it is a local government and thus a public entity pursuant to Title II of the ADA, 42 U.S.C. 12131. Title II of the ADA prohibits discrimination against qualified individuals with disabilities on the basis of disability in the services, programs, or activities of a public entity. 42 U.S.C. 12132. The Dakota County Jail is a service, program, or activity of Dakota County.

3.      The Attorney General is authorized, under 28 C.F.R. Part 35, Subpart F, to investigate the allegations of the complaint in this matter to determine Dakota County's compliance with Title II of the ADA.  The United States has the authority to issue findings, and, where appropriate, negotiate and secure voluntary compliance agreements. Furthermore, the United States is authorized, under 42 U.S.C. 12133, to bring civil actions enforcing Title II of the ADA should it fail to secure voluntary compliance pursuant to Subpart F.

4.      The U.S. Attorney's Office investigated the complaint and determined that the allegations set forth in Matejka's complaint were substantiated. Specifically, a sign language

PLAINTIFF'S
EXHIBIT
C

interpreter was never provided to Matejka during his arrest and booking when it was necessary to achieve effective communication with him. As a result, Matejka remained in jail for several additional hours and he was not booked until after his court appearance the day following his arrest. In addition, Dakota County did not provide Matejka with an operational TDD, while other detainees had access to telephones.

5.     The Parties have determined that this complaint can be resolved without further federal enforcement action or litigation. In order to avoid the time and expense of litigation and in order to continue its efforts to comply fully with the ADA, Dakota County agrees to enter into this Agreement. It is understood that this Agreement does not constitute an admission by Dakota County of any wrongdoing or liability.

## AGREEMENT

6.   **Definitions.**

The parties agree and stipulate that certain terms will be defined for purposes of this Agreement:

6.1     **"Auxiliary aids and services"** will mean qualified interpreters, note takers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, Telecommunications Devices for the Deaf (TDDs), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments . See 28 C.F.R. 35. 104.

6.2     **"Detainee"** will mean and refer to any individual who is being booked at or being housed for any length of time at the Dakota County Jail.

6.3     **"Disability"** will be defined as it is in the ADA, 42 U.S.C. 12102(2).

6.4     **"Effective communication"** will mean communication with persons with disabilities that is as effective as communication with others. Effective communication is achieved by furnishing appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities an equal opportunity to participate in or benefit from the services, programs, or activities of a public entity.

6.5     **"Qualified interpreter"** will mean and refer to a sign language or oral interpreter who is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary

specialized vocabulary. Accordingly, an interpreter must be able to sign to the deaf individual (or interpret orally to the person who does not use sign language) what is being said by the hearing person and to voice to the hearing person what is being signed or said by the deaf individual. The interpreter must be able to interpret in the language the deaf person uses (e.g. American Sign Language or Signed English) and must be familiar with terms and phrases commonly used during booking and detention. Additionally, although a qualified interpreter may be certified, a certified interpreter is not necessarily qualified, if he or she is not a good communications match for the deaf person erg., where the deaf person uses Signed English and the interpreter uses American Sign Language) or the situation (e. g., where the interpreter is unfamiliar with the necessary specialized vocabulary). auxiliary aids or services to be provided will be determined in accordance with paragraphs 7.4 and 7.5 below.

6.6    "TDDs" will mean devices that are used with a telephone to communicate with persons who are deaf or hard of hearing by typing and reading communications.

## 7.    Equitable Relief.

7.1    **Nondiscrimination.**    Dakota County agrees not to engage in any act or practice, directly or through contractual, licensing, or other arrangements, that has the purpose or effect of unlawfully discriminating against any person with a disability in violation of Title II of the ADA. Unless otherwise indicated, within thirty days after the effective date of this Agreement, Dakota County agrees to implement fully the practices and policies set forth below.

7.2    **Provision of Auxiliary Aids and Services.**    Dakota County will ensure that appropriate auxiliary aids and services are made available to all detainees who arc deaf or hard of hearing, where such aids and services are necessary to ensure effective communication with these individuals, so that they may participate in or benefit from the services, programs, or activities of the Dakota County Jail on an equal basis with other individuals. Pursuant to 28 C.F.R. 35.135, Dakota County is not required to provide personal devices and services to detainees.

7.3    **Services, Programs, and Activities Covered.**    Dakota County will ensure that appropriate auxiliary aids and services are made available and paid for by the County in all services, programs, or activities provided to detainees at the Dakota County Jail, including, but not limited to:  the booking process; orientation; medical examinations; meetings with social workers; and during any other detention, rehabilitative, or educational program

provided by the County to detainees at the Dakota County Jail. The particular auxiliary aids or services to be provided will be determined in accordance with paragraph 7.4 and 7.5 below.

    **7.4     Type of Auxiliary Aid or Service.**     In determining what type of auxiliary aid and service is necessary to comply with the ADA, or any provision of this Agreement, Dakota County will give primary consideration to the request of the detainee who is deaf or hard of hearing. See 28 C.F.R. 35.160(b)(2). Dakota County will honor the request unless it can demonstrate that another Effective means of communication exists or that use of the means requested would result in a fundamental alteration of Dakota County programs and services or in undue financial and administrative burdens. 28 C.F.R. 35.160. See 28 C.F.R. Pt. 35 App. A (Section 35.160 General) 535 (2006). The decision that a particular request for auxiliary aids and services would result in a fundamental alteration of Dakota County's programs and services or in undue financial and administrative burdens must be made by the head of the particular County agency or his or her designee after considering all the resources available for use in the funding and operation of that agency's programs and services and must be accompanied by a written statement of the reasons for reaching that conclusion. See 28 C.F.R. 35.164.

    **7.5     Sign Language and Oral Interpreters.**     Dakota County will offer qualified sign language interpreters to detainees who are deaf or hard of hearing and who , pursuant to paragraph 7.4 above, indicate a preference for a sign language interpreter, and qualified oral interpreters to detainees who are deaf or hard of hearing and who, pursuant to paragraph 7.4 above, indicate a preference for oral interpreters. Dakota County will not rely upon family members, friends, or any other persons who are not qualified interpreters to interpret for deaf or hard of hearing detainees or members of the public.  Dakota County inmates are not considered qualified interpreters for purposes of this Agreement.

    **7.6     Prohibition of Surcharges.**     All appropriate auxiliary aids and services required by this Agreement will be provided to detainees free of charge.

    **7.7     Training.**     Dakota County will develop an ADA/Section 504 training curriculum encompassing the policies and practices described in this Agreement for all staff who provide the County's programs and services to detainees. This training will include the following objectives: to inform staff of their legal obligations to provide appropriate auxiliary aids and services where necessary to ensure effective communication with detainees who are deaf or hard of hearing; to identify promptly communication needs and preferences of detainees receiving the County's programs or services who are deaf or hard of hearing; and to secure qualified interpreter services as quickly as reasonably possible when necessary. The County will begin conducting training sessions for existing employees within three (3) months of the effective date of this Agreement and will conclude the training sessions within twelve (12) months of the effective date of this Agreement. The County will ensure that all new employees who will have contact with detainees participating in the County's programs

and services will receive the training as a component of pre-service training and orientation. Existing employees will receive the training as a component of regular in-service education.

**7.8    TDDs.**    Within three (3) months of the effective date of this Agreement, Dakota County will provide a TDD for use by detainees who are deaf or hard of hearing and who require use of a TDD for effective communication. Detainees who are deaf or hard of hearing will be permitted access to a TDD on the same terms as hearing detainees are permitted access to telephones , except that , to the extent detainees ' telephone calls are subject to time limitations , these limitations will be reasonably extended for those detainees using a TDD. If a TDD is not available in the same location as telephones used by detainees who are not deaf or hard of hearing, detainees who use a TDD will be allocated reasonable additional time to walk to and from the TDD location. Dakota County will ensure that the privacy of telephone calls by detainees using a TDD is equal to that of other detainees' telephone calls.

**7.9    Volume-Control Mechanisms.**    Within three (3) months of the effective date of this Agreement, Dakota County will provide a telephone equipped with volume control mechanisms for use by detainees who are hard of hearing and who require use of a telephone equipped with volume control for effective communication. If a volume control telephone is not available in the same location as telephones used by detainees who are not deaf or hard of hearing, detainees who use volume control telephones will be allocated reasonable additional time to walk to and from the volume control telephone location. Dakota County will have twelve (12) months from the effective date of this Agreement to complete the installation of these volume-control mechanisms.

**7.10    Hearing Aid -Compatible Telephones.**    Within three (3) months of the effective date of this Agreement, Dakota County will provide a telephone that is hearing aid-compatible for use by detainees who are hard of hearing and who require a telephone that is hearing aid compatible for effective communication. If hearing aid-compatible telephone is not available in the same location as telephones used by detainees who are not deaf or hard of hearing, detainees who use hearing aid compatible telephones will be allocated reasonable additional time to walk to and from the hearing aid-compatible telephone location .

**7.11    Emergency Notification Systems.**    Within three (3) months of the effective date of this Agreement, Dakota County will design a system to provide detainees who are deaf or hard of hearing with effective communication in any emergency notification at the facility.

**7.12    County Policies and Procedures.**    Within two (2) months of the effective date of this Agreement, Dakota County will promulgate new policies and procedures for the Dakota County Jail that incorporate the equitable relief agreed to in this Agreement. The U.S. Attorney will have the right to review the new policies and procedures prior to final adoption

by the County.

**8.    Miscellaneous Provisions.**

   **8.1    Retaliation and Coercion.**    Dakota County agrees not to retaliate against or coerce any individual who is receiving the County's services, programs, or activities and who is trying to exercise his or her rights under this Agreement, and/or Title II of the ADA.

   **8.2    Ongoing Review of Compliance.**    The United States may review compliance with this Agreement at any time.

   **8.3 Notification of Noncompliance.**    If the United States believes that Dakota County is not in compliance with this Agreement, it will notify the Dakota County Administrator and the Dakota County Attorney in writing of the alleged noncompliance and attempt to seek a resolution of the matter. Such notice will contain reasonable particulars concerning the alleged violation. If the Parties are unable to reach a resolution within thirty (30) days of the date of the written notification, the United States may bring an action to enforce compliance with the ADA and to enforce the terms of this agreement.

   **8.4    Nonwaiver of Enforcement.**    Failure by the United States to enforce this entire Agreement or any provision thereof with respect to any deadline or any other provision herein will not be construed as a waiver of their right to enforce other deadlines and provisions of this Agreement.

   **8.5    Covenant Not to Sue.**    In consideration of the terms of this Agreement, the United States agrees to refrain from filing a civil suit against Dakota County relating to the allegations contained in Matejka's complaint and relating to the findings made in this case, Department of Justice ADA Complaint No. 204-39-139. If there is noncompliance with this Agreement, the United States may commence suit against Dakota County pursuant to paragraph 8.3 above.

   **8.6    Public Document.**    A copy of this Agreement may be made available to any person.

   **8.7    Parameters of Agreement.**    This Agreement is a complete and final disposition of all federal claims against Dakota County related to Department of Justice ADA Complaint No. 204-39-139. This Agreement does not purport to remedy any other potential violation of the ADA, or any other federal or state law. It also does not affect Dakota County's continuing responsibility to comply with all aspects of Title II of the ADA.

   **8.8    Entire Agreement.**    This Agreement constitutes the entire agreement between the parties on the federal claims against Dakota County related to Department of Justice ADA Complaint No.-204-39-139, and no other statement , promise, or agreement,

either written or oral , made by the parties regarding the federal claim that is not contained in this written Agreement will be enforceable under its provisions.

**8.9  Headings.**    The paragraph headings in this Agreement are for convenience only and will not be deemed to affect in any way the language of the provisions to which they refer.

**8.10  Severability.**    If any term of this Agreement is demanded by any court to be unenforceable, the other terms of this Agreement will nonetheless remain in full force and effect provided, however, that if the severance of any such provision materially alters the rights or obligations of the parties, the parties will engage in good faith negotiations in order to adopt mutually agreeable amendments to this Agreement as may be necessary to restore the parties as closely as possible to the initially agreed upon relative rights and obligations.

**8.11  Signatories Bind Parties.**    Signatories on behalf of the parties represent that they are authorized to bind the parties to this Agreement.

**8.12  Effective Date; Termination.**    The effective date of this Agreement is the date of the last signature below. This Agreement will remain in effect for thirty-six (36) months from its effective date.

### SETTLEMENT AGREEMENT
### IN
### U.S. DEPARTMENT OF JUSTICE ADA COMPLAINT NO. 204-39-139

Dated: 10-3-08                     FRANK J . MAGILL, JR.
                                   Acting United States Attorney


                                   BY: GREGORY G. BROOKER
                                   Assistant U.S . Attorney
                                   Attorney 10 Number 166066
                                   600 U.S. Courthouse
                                   300 South Fourth Street
                                   Minneapolis, MN 55415
                                   (612) 664-5600

                                   Attorneys for the
                                   United States of America

## SETTLEMENT AGREEMENT
## IN
## U.S. DEPARTMENT OF JUSTICE ADA COMPLAINT NO.
## 204-39-139

Dated: 9-26-08                          COUNTY OF DAKOTA
                                        STATE OF MINNESOTA

                                        BY:_____
                                            Brandt Richardson
                                            Dakota County Administrator


Dated: 9-24-08                          COUNTY OF DAKOTA
                                        STATE OF MINNESOTA

                                        BY:_____
                                            James C. Backstorm
                                            Dakota County Attorney


Approved as to form:

_____9-24-08____
_____Assistant County Attorney/Date

---

Return to Settlements

ADA Home Page

Last updated April 21, 2009

BEFORE THE HUMAN RIGHTS DEPARTMENT
OF THE STATE OF MINNESOTA

In the Matter of:

DHR File No. 44768

Allen Matejka,

Charging Party,

**SETTLEMENT AGREEMENT
AND RELEASE OF CLAIMS**

vs.

Dakota County, Minnesota,

Respondent.

This Settlement Agreement is made and entered into among Allen Matejka ("Matejka"),

the Minnesota Department of Human Rights (the "Department"), and Dakota County, Minnesota

("Respondent").

WHEREAS, on or about September 30, 2004, Matejka filed with the Department a

charge of discrimination against Respondent alleging that Respondent discriminated against him

on the basis of disability; and

WHEREAS, the Department made a finding of probable cause to believe that Respondent

discriminated against Matejka on the basis of disability in violation of Minn. Stat. § 363A.12;

and

WHEREAS, Respondent has denied that it violated the Minnesota Human Rights Act

("MHRA") or is liable to Matejka; and

WHEREAS, the parties to this Settlement Agreement desire to avoid the expense and

uncertainties of litigation by entering into this Settlement Agreement;

NOW THEREFORE, in consideration of the recitals and the promises made herein, the

parties agree as follows:



PLAINTIFF'S
EXHIBIT
D

1.   **DEFINITIONS**

The parties agree and stipulate that certain terms will be defined for purposes of this Agreement:

**1.1**   **Auxiliary aids and services** will mean: qualified interpreters, notetakers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, Telecommunications Devices for the Deaf (TDDs), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments.

**1.2**   **Detainee** will mean and refer to any individual who is being booked at or being housed for any length of time at the Dakota County Jail.

**1.3**   **Disability** will be defined as it is in the MHRA, Minn. Stat. § 363A.03, subd. 12.

**1.4**   **Effective communications** will mean communications with persons with disabilities that are as effective as communications with others.  Effective communication is achieved by furnishing appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities an equal opportunity to participate in or benefit from the services, programs, or activities of a public entity.

**1.5**   **Qualified interpreter** will mean and refer to a sign language or oral interpreter who is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary.  Accordingly, an interpreter must be able to sign to the deaf individual (or interpret orally to the person who does not use sign language) what is being said by the hearing person and to voice to the hearing person what is being signed or said by the deaf individual. The interpreter must be able to interpret in the language the deaf person uses (e.g. American Sign Language or Signed English) and must be

familiar with terms and phrases commonly used during booking and detention. Additionally, although a qualified interpreter may be certified, a certified interpreter is not necessarily qualified, if he or she is not a good communications match for the deaf person (e.g., where the deaf person uses Signed English and the interpreter uses American Sign Language) or the situation (e.g., where the interpreter is unfamiliar with the necessary specialized vocabulary).

     1.6    **TDDs** will mean: devices that are used with a telephone to communicate with persons who are deaf or hard of hearing by typing and reading communications.

2.    **EQUITABLE RELIEF**

     2.1    **Nondiscrimination.** Dakota County agrees not to engage in any act or practice, directly or through contractual, licensing, or other arrangements, that has the purpose or effect of unlawfully discriminating against any person with a disability in violation of the MHRA. Unless otherwise indicated, within thirty (30) days after the effective date of this Agreement, Dakota County agrees to implement fully the practices and policies set forth below.

     2.2    **Provision of Auxiliary Aids and Services.** Dakota County will ensure that appropriate auxiliary aids and services are made available to all detainees who are deaf or hard of hearing, where such aids and services are necessary to ensure effective communication with these individuals, so that they may participate in or benefit from the services, programs, or activities of the Dakota County Jail on an equal basis with other individuals.

     2.3    **Services, Programs, and Activities Covered.** Dakota County will ensure that appropriate auxiliary aids and services are made available in all services, programs, or activities provided and paid for by it to detainees at the Dakota County Jail, including, but not limited to: the booking process; orientation; medical examinations; meetings with social workers; and during any other detention, rehabilitative, or educational program provided and paid for by it to

3

detainees at the Dakota County Jail. The particular auxiliary aids or services to be provided will be determined in accordance with paragraphs 2.4 and 2.5 below.

2.4     **Type of Auxiliary Aid or Service.** In determining what type of auxiliary aid and service is necessary to comply with the MHRA, or any provision of this Agreement, Dakota County will give primary consideration to the request of the detainee who is deaf or hard of hearing. Dakota County will honor the request unless it can demonstrate that another effective means of communication exists or that use of the means requested would result in a fundamental alteration of Dakota County's programs and services or in undue financial and administrative burdens. The decision that a particular request for auxiliary aids and services would result in a fundamental alteration of Dakota County's programs and services or in undue financial and administrative burdens must be made by the head of the particular County agency or his or her designee after considering all the resources available for use in the funding and operation of that agency's programs and services and must be accompanied by a written statement of the reasons for reaching that conclusion.

2.5     **Sign Language and Oral Interpreters.** Dakota County will offer qualified sign language interpreters to detainees who are deaf or hard of hearing and who, pursuant to paragraph 2.4 above, indicate a preference for a sign language interpreter, and qualified oral interpreters to detainees who are deaf or hard of hearing and who, pursuant to paragraph 2.4 above, indicate a preference for oral interpreters. Dakota County will not require family members, friends, other inmates or detainees, or any other detainees who are not qualified interpreters to interpret for deaf or hard of hearing detainees or members of the public.

2.6     **Prohibition of Surcharges.** All appropriate auxiliary aids and services required by this Agreement will be provided to detainees free of charge.

4

2.7   **Training.** Dakota County will develop a training curriculum encompassing the policies and practices described in this Agreement for all staff who provide the County's programs and services to detainees. This training will include the following objectives: to inform staff of their legal obligations to provide appropriate auxiliary aids and services where necessary to ensure effective communication with detainees who are deaf or hard of hearing; to identify promptly communication needs and preferences of detainees receiving the County's programs or services who are deaf or hard of hearing; and to secure qualified interpreter services as quickly as reasonably possible when necessary. The County will begin conducting training sessions for existing employees within three (3) months of the effective date of this Agreement and will conclude the training sessions within twelve (12) months of the effective date of this Agreement. The County will ensure that all new employees who will have contact with detainees participating in the County's programs and services will receive the training as a component of pre-service training and orientation. Existing employees will receive the training as a component of regular in-service education.

2.8   **TDDs.** Dakota County will provide a TDD for use by detainees who are deaf or hard of hearing and who require use of a TDD for effective communication. Detainees who are deaf or hard of hearing will be permitted access to a TDD on the same terms as hearing detainees are permitted access to telephones, except that, to the extent detainees' telephone calls are subject to time limitations, these limitations will be extended for those detainees using a TDD. If a TDD is not available in the same location as telephones used by detainees who are not deaf or hard of hearing, detainees who use a TDD will be allocated additional time to walk to and from the TDD location. Dakota County will ensure that the privacy of telephone calls by detainees using a TDD is equal to that of other detainees' telephone calls.

**2.9     Volume-Control Mechanisms.**   Dakota County will provide a telephone equipped with volume control mechanisms for use by detainees who are hard of hearing and who require use of a telephone equipped with volume control for effective communication. If a volume control telephone is not available in the same location as telephones used by detainees who are not deaf or hard of hearing, detainees who use volume control telephones will be allocated additional time to walk to and from the volume control telephone location.  Dakota County will have twelve (12) months from the effective date of this Agreement to complete the installation of these volume-control mechanisms.

**2.10     Hearing Aid-Compatible Telephones.**  Dakota County will provide a telephone that is hearing aid-compatible for use by detainees who are hard of hearing and who require a telephone that is hearing aid-compatible for effective communication.  If a hearing aid-compatible telephone is not available in the same location as telephones used by detainees who are not deaf or hard of hearing, detainees who use hearing aid-compatible telephones will be allocated additional time to walk to and from the hearing aid-compatible telephone location.

**2.11     Emergency Notification Systems.**   Dakota County will design a system to provide detainees who are deaf or hard of hearing with comparable emergency notification.

**2.12     County Policies and Procedures.**   Within two (2) months of the effective date of this Agreement, Dakota County will promulgate new policies and procedures for the Dakota County Jail that incorporate the equitable relief agreed to in this Agreement. The Department will have the right to review the new policies and procedures prior to final adoption by the County.

**3.     MISCELLANEOUS PROVISIONS**

6

**3.1    Retaliation and Coercion.**  Dakota County agrees not to retaliate against or coerce any individual who is receiving the County's services, programs, or activities and who is trying to exercise his or her rights under this Agreement or the MHRA.

**3.2    Ongoing Review of Compliance.**  The Department may review compliance with this Agreement at any time.

**3.3    Notification of Noncompliance.**  If the Department believes that Dakota County is not in compliance with this Agreement, it will notify the Dakota County Administrator and the Dakota County Attorney in writing of the alleged noncompliance and attempt to seek a resolution of the matter.  Such notice will contain reasonable particulars concerning the alleged violation.  If the parties are unable to reach a resolution within ninety (90) days of the date of the written notification, the Department may bring an action to enforce compliance with the MHRA or this Agreement.

**3.4    Nonwaiver of Enforcement.**  Failure by the Department to enforce this entire Agreement or any provision thereof with respect to any deadline or any other provision herein will not be construed as a waiver of their right to enforce other deadlines and provisions of this Agreement.

**3.5    Release and Covenant Not to Sue.**  In consideration of the terms of this Agreement, the Department and Matejka agree to refrain from filing a civil suit against Dakota County relating to the allegations contained in Matejka's charge of discrimination and relating to the probable cause findings made in this case, Department File No. 44768.  If there is noncompliance with this Agreement, the Department may commence suit against Dakota County pursuant to paragraph 3.3 above.

**3.12    Effective Date; Termination.** The effective date of this Agreement is the date of the last signature below. This Agreement will remain in effect for thirty-six (36) months from its effective date.

4.    **PAYMENT**

Respondent agrees to pay the sum of Five Hundred and no/100ths Dollars ($500.00). The payment shall be made by delivering to Erica Jacobson, attorney for the Department, 900 Bremer Tower, 445 Minnesota Street, St. Paul, MN 55101-2127, within fourteen (14) days after this Agreement is fully executed, a check for Five Hundred and no/100ths Dollars ($500.00) drawn to the order of "Allen Matejka."

Respondent will provide Matejka with a 1099 form as a result of this payment. The Department recommends to Matejka that he consult with his tax advisor regarding the proper tax treatment of this payment. Matejka agrees that he is solely responsible for and will pay any and all taxes for which he is liable as a result of this payment.

5.    **SIGNATURES**

The parties have caused this Agreement to be signed on the dates opposite their signatures.

Dated: _Dec 12, 2006_        _Allen D. Matejka_
                                Allen Matejka

                                Dakota County, Minnesota

Dated: _1-4-07_              By: _Brandt Richard_
                                Brandt Richardson
By: _James C. Backstrom_      Title: Dakota County Administrator
    James C. Backstrom
    Dakota County Attorney    Date: _1/8/07_

                                Minnesota Department of Human Rights

Dated: _1-22-07_             By: _____
                                Velma J. Korbel, Commissioner

AG: #1595051-vi

9